**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _:__-cv-_____-____-___

JAMES L. FOX,

Plaintiff,

v.

BLUEPRINT ENERGY PARTNERS, INC.

Defendant.

---

PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL

---

Plaintiff, James Fox, by and through his attorney, Ralph E. Lamar, files this his Complaint, alleging as follows:

## I.   NATURE OF THE CASE

1. This employment discrimination and civil rights action is brought against Defendant BluePrint Energy Partners, Inc., ("Blueprint"), by Plaintiff James L. Fox, ("Fox"), for equitable relief and monetary damages to redress the deprivation of civil rights secured to him by Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981.

Specifically, he alleges that while he was an employee of Defendant he was subjected to discriminatory comments on the basis of his race by his supervisor and/or co-workers. His complaints about race discrimination were ignored so the harassment continued. Finally, when his employer had heard its fill of his complaints about the discriminatory way he was being treated it fired him in retaliation for his complaints of racial harassment. He alleges that the Defendant's actions caused him mental distress and humiliation, and loss of employment and

compensation. Plaintiff seeks back pay, reinstatement or front pay, compensatory damages, punitive damages, and attorneys' fees and costs of this action from Defendant.

## II. JURISDICTION AND VENUE

2. This action is initiated pursuant to Title VII of the Civil Rights Act of 1964 as amended and 42 U.S.C. § 1981. This Court has subject matter jurisdiction for these claims under 28 U.S.C. §§ 1331, because they arise under the laws of the United States. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

3. Venue is proper in this judicial District under 28 U.S.C. § 1391(b), (c) and 42 U.S.C. § 2000e-5(f)(3), because Defendant has offices, conducts business, and can be found in this District, and the causes of action arose and the acts and omissions complained of occurred therein.

## III. PARTIES

4. Plaintiff James Fox is a citizen of the U.S. currently residing in Greeley, CO and is subject to the jurisdiction of this court.

5. Defendant was the employer who terminated plaintiff's employment. At all relevant times Defendant has had at least 15 employees and is capable of being sued under Title VII and is subject to the jurisdiction of this court under that statute. One of Defendant's offices, out of which it regularly does business, is located at 1200 Lonetree Lane, in Nunn, Colorado. Defendant is therefore subject to the jurisdiction of this court.

## IV. STATEMENT OF FACTS

7. Plaintiff is an African American male.

8. Fox began his employment with Defendant on or about October 15, 2017, as a rack hand.

9. He was later moved to work in inventory.

10. At all times plaintiff worked in Defendant's location in Nunn, Colorado.

11. During his employment Fox performed to Defendant's expectations.

12. Fox was Defendant's only african-american employee at the time of his hire.

13. Beginning on his first day of employment with Defendant plaintiff was subjected to racial harassment in the form of co-workers using the word "nigger" either while directly speaking to him or while in his presence.

14. On Fox's first day of work Cole Christensen walked into the main work trailer, and as he was talking to the rest of the crew members that were present, including the inspection managers James Hooks aka "Dozer" and Rory, he shouted the word "Nigger" in response to the conversation they were having.

15. The use of the word "nigger" in 2017 would have been offensive to any reasonable person.

16. Plaintiff personally found the use of the word "nigger" to be offensive.

17. Later, when they had driven back to the hotel following the shift, as Anthony and Fox walked into their hotel room and Anthony realized something of his was missing, he yelled out the word "Nigger."

18.     Fox reported both of these incidents to Gary Newman, the Colorado Operations manager, and Kent Stevens, the CEO, and nothing was done in response to either of these employees.

19.     In October of 2017? plaintiff was at a job site and had just been introduced to Tillman. As they were walking to count some pipeline and in the middle of a conversation Tillman was describing another African-American person and called him a "Nigger".

20.     During Fox' employment with Defendant Tillman repeated the word "Nigger" in Fox' presence approximately 15 times.

21.     Fox reported these incidents of harassment to Newman on several occasions, but was told that Tillman was very valuable to the company and he wasn't going to receive any disciplinary actions, and that Fox should try to talk to him about it.

22.     Fox did approach Tillman and let him know that it was very offensive and that Fox didn't like the use of racial slurs, and in response Tillman said that "It's just slang."

23.     Tillman continued to use the word "nigger" after the conversation with Fox.

24.     Newman told Fox that he had talked to Tillman about his use of the word "nigger', and that in the middle of their conversation a bird flew into their windshield, and Tillman yelled out "Did you see that Nigger just flew into the windshield."

25.     Newman was laughing as he told Fox this.

26.     In August, as they were driving in one of the work trucks, Rory, the Wyoming inspection manager, was mad at a customer and called him a "Nigger" as they were driving past him.

27.     On three separate occasions in 2018 when Chris Libert and Fox were riding in the back of the work truck together, Libert would rap along with whatever song they had playing and

would say all the racial slurs, including "Nigga", in front of Fox even though he knew about all Fox's complaints to management about the use of racial slurs.

28. When Russell Carty started working at Blueprint in 2018 Fox was warned by Newman that Carty used the word "Nigger" frequently.

29. The first time Fox and Carty worked together and the crew was driving to dinner Carty used the word.

30. Newman was in the truck when this occurred.

31. Newman said nothing to Carty.

32. Carty repeated his use of the word "nigger" frequently during Fox's employment.

33. In September of 2018 Chris Frychman used the word "Nigger" on 3 separate occasions while he was working with Fox, and each time he was either speaking to Fox or describing a minority.

34. On the occasions when Fox reported these incidents Newman either told Fox to try to talk to the persons who made the comments or said that he (Newman) would do so, but nothing was ever done in response to Fox's complaints, and every time he reported these incidents Fox felt like he was the one that had done something wrong, because he was interrogated and questioned as if he was on trial.

35. In response to Fox's complaints he was told by Newman that Tillman wasn't going anywhere because he was too valuable to the team.

36. In 2018 there were many occasions when Charles Hooks aka "Smoky" used racial slurs.

37. Fox tried to talk to Smoky about it but he told Fox "I don't respect you, and we aren't going to get along."

5

38. One of the occasions where Hooks made the workplace hostile is when they were working together running EMI, which is the final test to run on pipeline before it's cleared to be used at a rig location.

39. Smoky purposely lifted the pipeline on his end before Fox was ready, which caused the pipeline to hit Fox in the head and made him very dazed and confused. As a result Fox was unable to drive home that night.

40. Smoky also would frequently discuss "Sundown towns" in front of Fox to the other crew members.

41. "Sundown towns" were towns and neighborhoods in the United States where segregation on the basis of skin color was practiced through explicit legal restrictions, and implicit ones - where minorities were assaulted if they were caught outdoors within the city limits after sundown, thence the name.

42. Fox told Newman that Smoky was discussing "Sundown towns" in front of crew members but Newman did not express any significant disapproval but simply said that Fox should talk to Smoky about it and that Smoky was just an idiot.

43. While they were out for lunch one day with the crew, Newman brought "Sundown towns" up himself and laughed about the concept.

44. In response Smoky said "They do exist", and looked at Fox and said that Fox should visit one in front of everyone present.

45. Newman said nothing to indicate he disapproved of Smoky's comment.

46. On another occasion Smoky, James Hooks (Smoky's older brother), and Fox were at a Burger King eating lunch and discussing promotions, and because Smoky was very upset that he hadn't received one, said "I'm tired of being treated like a Nigger".

47. Another incident with Smoky occurred when they were running EMI. The cords on Smoky's side had gotten tangled, and because of that he yelled out "Bitch Nigga" toward Fox saying it was his fault.

48. Fox reported this incident to Newman and Smoky was purportedly fired for this incident.

49. However, Smoky was rehired be Defendant soon afterwards.

50. When Smoky saw Fox he used the word again in Fox's presence while he was talking to James Hooks and the rest of the crew.

51. Fox complained about it to Stevens and Newman.

52. They told Fox that they didn't believe Smoky would ever say that word again because he had taken an online course prior to his rehire.

53. Stevens and Newman called Fox a liar for making the allegation and fired him on October 19, 2018.

## FIRST CAUSE OF ACTION
## VIOLATION OF TITLE VII FOR HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. The harassment plaintiff was subjected to by his co-workers was unwelcome

56. The harassment was on the basis of plaintiff's race.

57. The harassment was severe and/or pervasive and a reasonable person in plaintiff's shoes would have found if to be unwelcome and offensive.

58. Plaintiff's complaints to management about the harassment placed it on notice of the unlawful conduct of plaintiff's co-workers.

59. Defendant did not take any steps reasonably designed to prevent or otherwise stop the harassment from re-occurring.

60. The harassment continued after plaintiff made his complaints about the hostile working environment.

61. Defendant is liable under Title VII for a hostile working environment on the basis of plaintiff's race.

62. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

63. Because plaintiff's complaints were made to the appropriate persons and Defendant refused to take any action to stop or address the harassment it acted with malice and/or reckless indifference to plaintiff's federally protected civil rights under Title VII, and plaintiff is therefore entitled to receive punitive damages.

### SECOND CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1981 FOR HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE

64. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

65. The harassment plaintiff was subjected to by his co-workers was unwelcome

66. The harassment was on the basis of plaintiff's race.

67. The harassment was severe and/or pervasive and a reasonable person in plaintiff's shoes would have found if to be unwelcome and offensive.

68. Plaintiff's complaints to management about the harassment placed it on notice of the unlawful conduct of plaintiff's co-workers.

69. Defendant did not take any steps reasonably designed to prevent or otherwise stop the harassment from re-occurring.

70. The harassment continued after plaintiff made his complaints about the hostile working environment.

71. Defendant is liable under 42 U.S.C. § 1981 for a hostile working environment on the basis of plaintiff's race.

72. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

73. Because plaintiff's complaints were made to the appropriate persons and Defendant refused to take any action to stop or address the harassment it acted with malice and/or reckless indifference to plaintiff's federally protected civil rights under 42 U.S.C. § 1981 and plaintiff is therefore entitled to receive punitive damages.

### THIRD CAUSE OF ACTION
### VIOLATION OF TITLE VII FOR RETALIATION

74. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

75. Plaintiff was terminated because of his protected activity thereby subjecting Defendant to liability for a violation of the anti-retaliation provisions of Title VII.

76. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

77. Because plaintiff's complaints were made to the appropriate persons and Defendant terminated his employment based upon those complaint it acted with malice and/or reckless indifference to plaintiff's federally protected civil rights under Title VII, and plaintiff is therefore entitled to receive punitive damages.

### FOURTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1981 FOR RETALIATION

78. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

79. Plaintiff was terminated because of his protected activity thereby subjecting Defendant to liability for a violation of the anti-retaliation provisions of 42 U.S.C. § 1981.

80. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

81. Because plaintiff's complaints were made to the appropriate persons and Defendant terminated his employment based upon those complaint it acted with malice and/or reckless indifference to plaintiff's federally protected civil rights under 42 U.S.C. § 1981, and plaintiff is therefore entitled to receive punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in his favor:

(a) Awarding lost wages, including lost fringe benefits;

(b) Awarding compensatory damages;

(c) Awarding punitive damages;

(d) Order his reinstatement, or in the alternative, award front pay;

(e) Awarding the costs of this action, together with reasonable attorney's fees; and

(f) granting such other relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated this 10th day of February, 2020.

Respectfully submitted,

By: *s/Ralph E. Lamar, Esq.*
Ralph E. Lamar, Esq.
Attorney I.D. No. 44123
8515 Braun Loop
Arvada, CO 80005
(303) 345-3600
ralphlamar@ymail.com

Attorney for Plaintiff